The opinion of the Court* was drawn up by
Parker C. J.
The question presented by the report of judg6) jSj whether the defendants have made out a legal justification of the act for which they are charged as trespassers. It must be taken for granted, that the cattle of the plaintiff were found going at large within the town of Andover, without a keeper ; for that point is settled by the verdict. By the various statutes relating to this subject, it is made the duty of the field-drivers in towns to impound cattle so going at large, and to exact a penalty for each creature. so impounded. He is to give notice of the place where they are impounded, and if the penalties and costs are not paid in twenty-four hours, he is to apply to a justice of the peace, who shall issue his warrant to two persons, who are to appraise so many of the cattle as will amount to the penalties and the costs and charges, and the field-driver may keep as his own the cattle so appraised, or may cause the same to be sold, returning the surplus, if any, to the owner. If the proceedings in regard to these cattle were correct, then the plaintiff cannot recover. Their correctness is denied by the plaintiff’s counsel, and several objections have been taken to the proceedings, which will now be considered.
First, it is objected, that it did not appear by legal evidence, that the defendant was a field-driver, because there was no record of any vote of the town appointing the time and manner of notifying the inhabitants ; but this objection cannot prevail, because, as the choice was at an annual town meeting, when by law all town officers arei to be chosen, it must be presumed that the notice was legal, unless it shall be shown that the time or manner was not according to an appointment of the town, or was so unreasonable as to raise a *273 presumption of fraud on the part of those by whom the meeting was called.[1]
Next it was objected, that the application for a warrant of appraisement is insufficient, because it does not appear to have been in writing. It is a sufficient answer to this, that the statute does not require it to be in writing, and it was competent to the legislature to authorize a verbal application, where the warrant sought for relates to chattels, though by the constitution no arrest of the person can be justified without a warrant founded on a complaint in writing; or at least such is the judicial construction of the declaration of rights, in this respect.
The form of the oath is objected to as not conforming to the statute. The oath prescribed by the 4th section of St,
1788, c. 65, is “faithfully and impartially to estimate the damage done the party injured, and also to appraise so many of the creatures impounded, as shall be sufficient to answer the damages and all charges.” The oath administered was, that the appraisers would “ faithfully appraise the within-named creatures, according to their best skill and judgment.”
If this were a proceeding under the statute, to obtain dam ages by impounding cattle for doing damage, it might well be doubted, whether the oath as administered would be sufficient ; for it would leave the appraisers without the sanction of an oath in regard to the most important part of their duty, that of estimating the damages for which the injured party was to receive bis indemnity out of the very cattle by which the damage was done. But the process in this case was for a different purpose and object, viz. ascertaining how many of the cattle would be wanted to pay the penalty, which is *274 fixed by law for the owner to pay, for suffering them to go at large without a keeper; and in order to this, no estimate of the damages was required, nothing more being necessary than to count the cattle which were found thus at large. The offence for which the cattle were impounded, is not created by this general statute. The second section, which authorizes the field-driver to impound, limits the power to the case of swine unyoked or unringed, horses unfettered, and sheep not under the care of a shepherd, going at large ; and the third section gives the remedy of impounding to persons injured by swine, sheep, horses, or neat cattle, and the summary process therein provided seems to have relation solely to the case of cattle taken damage-feasant; and it was for this reason, that the form of the oath required an estimate of the damages. There seems to be no provision in this statute for impounding neat cattle merely for going at large, without doing damage, and therefore the oath prescribed is not appl" cable to such a case.
This defect was afterwards seen by the legislature, and by St. 1799, c. 61, it was for the first time provided, that the owner of neat cattle so going at large, if prohibited by the inhabitants of a town at any town meeting legally held for that purpose, should be subject to a penalty of twenty-five cents a head, and that the penalty should be recovered by impounding the cattle and proceeding therewith in manner as' is provided in the case of cattle found damage-feasant.
The St. 1804, c. 44, seems to be in affirmance of the statute of 1799, with some additional provisions, and by St. 1817, c. 143, the penalty is increased to fifty cents a head.[1]
It is unfortunate, that the course of legislation upon a subject of such common interest in the country should be so confused, as by examination of these several statutes it appears to be ; but we are bound to give effect to the intention of the legislature when we can discern it. Now it is plain, that the proceedings of a field-driver against cattle going at large without a keeper, cannot in all respects be like the proceedings of a party who impounds cattle damage-feasant. *275 In the former case, a fixed penalty is sought; in the latter, reasonable damages. We must suppose therefore, that the legislature, in directing that the same proceedings should be had in the former as in the latter case, intended a general conformity, varying only where it should be necessary. We cannot suppose that precisely the same oath was intended to be required, for it would be absurd to swear men to estimate damages, where none are claimed or have been sustained. It is the case where the doctrine of cy-pres will apply ; the oath is to conform to the duty to be done; and in tins case, the only duty was to ascertain, by valuation, the number of cattle necessary to pay the penalty and charges. The appraisers estimated .the cattle, which are the subject of this action, at 48 dollars, and that was all that was necessary for them to do. The penalty was fixed by law, and its amount was an affair of simple multiplication. ' They had nothing to do with the charges, nor does it appear that these are to be ascertained by the magistrate who issues the warrant. The law in this respect is certainly imperfect; but considering that all the proceedings are at the peril of the person impounding, no wrong can be said to be done to the owner of the cattle. He may have his replevin, and if any unreasonable demand was made upon him, he will prevail in that suit; or in trespass, he will recover his full damages, if there was any abuse of authority.
And this perhaps is a sufficient answer to another objection, which struck us as the most formidable one, viz. that the proceedings of the appraisers, with the amount of the penalty and charges, are not set out at large and returned on the warrant of appraisement. The whole is matter in pais, of which no record is kept; there is no adjudication; all that the magistrate does is ministerial; he gives authority to appraise, and nothing more ; there is no trial before him, and no parties. It is an affair therefore to be tried at law, as it has been in this case. If the defendant had failed to make out a complete defence in every particular, he would have been held to pay the value of the cattle. Nothing is concluded by the proceedings required by the statute, except the value of the cattle taken for the penalty and charges : so *276 that unless the defendant in such cases makes out a compíete title to them, he will be cast.
The objection, that this law was intended to apply to the cattle of inhabitants of the town, and not to those of strangers who may be driving them through, cannot be sustained. The legislature has authorized towns to legislate on this subject, and the fore'e of their law is coextensive with the territorial limits of the town ; those who come within the town are subject to it.
And we think a turnpike road passing through a town is as much a highway, for the purposes of the act, as a road laid out by authority of the Court of Sessions or of the town. The mischief is the same. Towns cannot prevent droves of cattle from passing over any roads within their territory ; but they have a right by law to require that they shall be watched, in order to prevent them from breaking into inclosures and doing damage.
The construction of the judge, in regard to notice of the impounding, we think was right; and also in regard to the non-tender of the overplus. The jury have found that the plaintiff designedly evaded the tender, and brought his action so immediately that the tender could not be made before, the commencement of it. If there is any balance’ due to him, he has a right of action to recover it.

 Morton J. did not ait in this cause, having been of counsel for one of the parties

 If the return on a warrant for calling a town meeting does not show how the meeting was warned, it will be presumed, in the absence of other proof, that it was warned in the mode agreed upon by the town. Ford v. Clough, 8 Greenl. 334.
In New Hampshire it is held, that when a town meeting is warned by a warrant posted up by the selectmen, they must make a return stating the time when and the place where it was posted up. And such return is the only evidence that can be received, to prove the warrant duly posted up. Cardigan v. Page, 6 N. Hamp. R. 182; Nelson v. Pierce, 6 N. Hamp. R. 194.

 See Revised Stat. c. 113.